# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No.94-40806

JOSEPH P. CHAMBERLAIN and
D. KATHLEEN CHAMBERLAIN,

Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

Appeal from the Decision of the United States
Tax Court

(September 27, 1995)

Before POLITZ, Chief Judge, JONES and PARKER, Circuit Judges.

POLITZ, Chief Judge:

Taxpayers, Joseph P. and D. Kathleen Chamberlain,[1] appeal the Tax Court's decision upholding the penalties assessed by the Commissioner of Internal Revenue. We affirm in part and reverse in part.

## Background

Joseph P. Chamberlain became a partner in Great Plains Partners in 1981. The partnership's principal objective was to enter into forward contracts with First Western

---

[1]Joseph P. and D. Kathleen Chamberlain are both parties to this action, having filed a joint income tax return.

Government Securities, Inc. In **Freytag v. Commissioner of Internal Revenue**[2] we reviewed the program operated by First Western and determined that it was a sham.[3]

During taxable year 1981, Great Plains deducted a loss from the First Western transaction totaling $9,079,794.75. The Chamberlains claimed an ordinary loss of $108,017.86, their share of the partnership's loss from the First Western transaction.

The Commissioner of Internal Revenue disallowed the loss and determined a deficiency in the amount of $36,211.82. The Commissioner assessed the regular late payment interest,[4] penalty interest because the substantial tax underpayment was attributable to a tax-motivated transaction,[5] and an additional penalty for taxpayers' negligence.[6]

The Tax Court sustained the Commissioner's imposition of the additional interest penalty referencing our conclusion in **Freytag** that the First Western transaction was a sham. In doing so the Tax Court rejected taxpayers' argument that their profit motive was relevant to the imposition of additional interest under section 6621(c), finding, nonetheless, that Joseph P. Chamberlain engaged in the transaction, broadly defined as becoming a partner in Great Plains to enter into the First Western transaction,[7] without the required profit motive.

Taxpayers paid the deficiency, interest, and penalties. They challenge only the penalty assessments. They contend that the Tax Court committed error in concluding that

_____

[2]904 F.2d 1011 (5th Cir. 1990), aff'd on other grounds, 501 U.S. 868 (1991).

[3]The taxpayers stipulate that the transaction between Great Plains and First Western is the same as that described in **Freytag**.

[4]26 U.S.C. § 6601.

[5]26 U.S.C. § 6621(c).

[6]26 U.S.C. § 6653(a).

[7]Characterizing the transaction this broadly is supportable because the primary purpose of the partnership was to engage in the First Western transaction.

their profit motive is irrelevant and in finding that they did not have a profit motive. They further contend that the Tax Court erred in finding them negligent and, as such, liable for the additional negligence penalty. Taxpayers maintain that the Tax Court erred in this latter determination because in claiming the loss on their joint tax return they relied upon the advice of a tax expert.

Analysis

A.      Section 6621(c) -- enhanced interest

Taxpayers maintain that because Joseph P. Chamberlain became a partner in Great Plains with a profit motive they should be relieved of the obligation to pay the additional interest under section 6621(c).

We review the Tax Court's legal conclusions *de novo*, but accept its findings of fact unless found to be clearly erroneous.[8] Clear error exists when we are left with the definite and firm conviction that a mistake has been made.[9] When the trial court's finding is based, in part, on the assessment of witness credibility, "we will not depart from such assessment except in the very rarest of circumstances."[10]

Section 6621(c) imposes 120% of the normal interest for substantial underpayment of tax, i.e., more than $1000, if such underpayment is attributable to a tax-motivated transaction.[11] Tax-motivated transactions include, *inter alia*, "any sham or fraudulent

---

[8]**Harris v. Commissioner of Internal Revenue**, 16 F.3d 75 (5th Cir. 1994).

[9]**Joslyn Manufacturing Co. v. Koppers Co., Inc.**, 40 F.3d 750 (5th Cir. 1994).

[10]**Port Arthur Towing Co. v. John W. Towing, Inc.**, 42 F.3d 312, 318 (5th Cir. 1995), petition for cert. filed, 64 U.S.L.W. 3017 (June 17, 1995) (No. 94-2122).

[11]26 U.S.C. § 6621(c).

3

transaction."[12] In the context of section 6621(c), "[a] sham or fraudulent transaction includes transactions that were not entered into for profit and are without economic substance."[13]

The Tax Court found that Chamberlain did not have a profit motive despite his contrary testimony. Obviously that finding is based in large part on the trier's credibility determination. Applying the appropriate standard of review, we must conclude that the factual finding is not clearly erroneous. Accordingly, there was no error in the imposition of the section 6621(c) interest rate.

B.      Section 6653(a) -- negligence penalty

The Commissioner advances the same factor, taxpayers' lack of a profit motive, to support imposition of the negligence penalty. Once the Commissioner determines that a negligence penalty is appropriate, taxpayer has the burden to disprove negligence.[14] We review the finding of negligence for clear error.[15]

During the applicable tax year, section 6653(a) imposed a penalty of 5% of any underpayment of tax, plus an amount equal to 50% of the interest due on the underpayment, if the underpayment was due to negligence.[16] "'Negligence` includes any failure to reasonably attempt to comply with the tax code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do under the circumstances."[17]

---

[12]26 U.S.C. § 6621(c)(3)(A)(v).

[13]**Lukens v. Commissioner of Internal Revenue**, 945 F.2d 92, 99 (5th Cir. 1991). In determining a profit motive we focus on the intent of the taxpayer, not that of the underlying entity or activity.

[14]**Freytag**.

[15]**Sandvall v. Commissioner of Internal Revenue**, 898 F.2d 455 (5th Cir. 1990).

[16]26 U.S.C. § 6653(a).

[17]**Heasley v. Commissioner of Internal Revenue**, 902 F.2d 380, 383 (5th Cir. 1990).

Good faith reliance on professional advice concerning tax laws is a defense.[18] The reliance must be objectively reasonable;[19] taxpayers may not rely on someone with an inherent conflict of interest,[20] or someone with no knowledge concerning that matter upon which the advice is given.[21] In this regard, the Supreme Court noted that "when an accountant or attorney <u>advises</u> a taxpayer on a matter of tax law, such as whether liability exists, it is reasonable for the taxpayer to rely on that advice."[22]

Taxpayers sought the advice of a tax expert about claiming the loss. The expert advised that there was "a good faith, supportable position" concerning the deductibility of the loss. The Tax Court erred in finding taxpayers negligent for claiming the loss. The record reflects no basis for a finding or conclusion that it was not reasonable for taxpayers to rely on the expert's advice.[23] "To require the taxpayer to challenge the [expert], to seek a 'second opinion,` or to try to monitor [the expert] on the provisions of the Code himself would nullify the very purpose of seeking the advice of a presumed expert in the first place."[24] Because the taxpayers reasonably relied on the advice of a tax expert in claiming

---

[18] <u>See</u> **United States v. Boyle**, 469 U.S. 241 (1985).

[19] **Goldman v. Commissioner of Internal Revenue**, 39 F.3d 402 (2d Cir. 1994).

[20] **Id.**

[21] **Freytag**.

[22] **Id.** at 251 (emphasis in original).

[23] The instant case demonstrates that one may enter into a transaction without a profit motive but not be negligent in claiming a tax loss if that claim is in reasonable reliance on the advice of a tax expert.

[24] **Id.**

5

the loss,[25] the negligence penalty should not have been imposed.

Capsulating today's disposition we note that: (1) in determining whether a loss deduction may be allowed we look to the transaction itself -- if it was a sham no deduction is appropriate;[26] (2) for imposition of the additional interest penalty we look, in part, to these taxpayers' motivation for the transaction, *i.e.*, was there a realistic profit expectation powering the investment engine;[27] and (3) for imposition of the negligence penalty, we ask whether the taxpayer was acting reasonably in claiming the loss.

The judgment of the Tax Court is AFFIRMED IN PART and REVERSED IN PART.

---

[25]See **Maurerman v. Commissioner of Internal Revenue**, 22 F.3d 1001 (10th Cir. 1994).

[26]**Freytag**.

[27]**Lukens**.