T.C. Memo. 1998-303


UNITED STATES TAX COURT


MARCO DEPLANO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13085-95.                      Filed August 20, 1998.


<u>Bernard Schulman</u>, for petitioner.

<u>Robert E. Marum</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined the following additions to petitioner's Federal income tax for 1983:

| Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
|---|---|---|
| $477 | * | $2,387 |

* 50 percent of the interest due on $9,549.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for decision are: (1) Whether petitioner is liable for additions to tax under section 6653(a)(1) and (2). We hold that he is. (2) Whether petitioner is liable for an addition to tax under section 6661(a). We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed, petitioner resided in New York, New York.

Petitioner received a bachelor of science degree from Trinity University of Texas in 1978. In 1983, petitioner was employed as an art director by Marsteller Inc. and also did graphic design and advertising work for Gorman-Glassberg, Inc. Also during 1983, petitioner ran a sole proprietorship providing freelance work in the field of graphic design and advertising from which he reported gross receipts of $49,983 and a net profit of $23,190. Petitioner was 26 years old in 1983.

Petitioner's return was prepared by Nicholas J. Coscia, an accountant with Coscia and Amsterdam. At this time, Mr. Coscia

had been petitioner's accountant for approximately 4 years.  Mr. Coscia was recommended to petitioner by a friend and coworker, Herb Karlitz, an entertainment lawyer.  Petitioner relied heavily on Mr. Coscia with respect to all financial matters and even consulted him for help in selecting a health insurance plan.

Prior to 1983, and beginning in or around 1979 or 1980, petitioner's investments had been exclusively in individual retirement accounts.  However, at some point in 1983, Mr. Coscia approached petitioner with the idea of investing in a partnership known as Ridge Energy Systems (Ridge Energy), which was in the business of leasing energy management equipment from the Saxon Energy Corporation (Saxon Energy).  Mr. Coscia recommended the investment to petitioner, describing it as a "good idea" that would be "very beneficial" to petitioner. Petitioner did not independently investigate Ridge Energy, but instead relied on Mr. Coscia's advice in making the investment.  Mr. Coscia assured him that "there was a bank involved, a tax consultant involved, tax specialist that made the whole thing completely kosher."  Mr. Coscia also indicated to petitioner that there was profit potential in the investment.  Mr. Coscia advised him that he had done "this kind of thing before, they were completely legal, and there were benefits to be had, especially from a profit point of view."  With respect to the payment schedule, Mr. Coscia indicated to petitioner that he would most likely receive profits

back from his investment even before he paid it in full. Mr. Coscia also told petitioner that he was an investor in Ridge Energy as well as members of his own family. Mr. Coscia did not disclose that he was receiving commissions from Saxon Energy for bringing in Ridge Energy investors. In late 1983, petitioner made a capital contribution of $5,391 to Ridge Energy and received a 5.3-percent interest in the partnership. Petitioner knew two of the other partners in Ridge Energy, one of whom was his coworker, Mr. Karlitz. Petitioner did not seek any other professional advice regarding the investment but did speak with Mr. Karlitz who reinforced what Mr. Coscia told him.

Petitioner had no prior experience with, or knowledge of, energy management systems and, with respect Ridge Energy in particular, he did not know where the equipment was placed, how it worked, what it looked like, or its function. Also, petitioner was not aware that the equipment was leased from Saxon Energy. Petitioner received certain written materials upon his investment in Ridge Energy that coincided with what he had been told by Mr. Coscia.[1] However, petitioner did not receive appraisals on the equipment and did not ask to see any appraisals because he felt "ignorant" about such matters.

---

[1] These written materials are not a part of the record in this case.

Ridge Energy filed a Form 1065, U.S. Partnership Return of Income for calendar year 1983 (partnership return), on August 9, 1984, prepared by Peter J. Amsterdam, a partner of Mr. Coscia. In the partnership return, Ridge Energy claimed a loss of $98,900, which consisted of $96,000 in leasing expenses, $2,800 in management fees, and $100 in attorney fees. Ridge Energy also claimed a basis of $1,485,000 for investment tax credit purposes in the energy management system leased from Saxon Energy. Petitioner's allocable shares of losses and investment tax credit basis flowing from Ridge Energy for 1983 were $5,219 and $78,370, respectively, as reported on Schedule K-1, Partner's Share of Income, Credits, Deductions, etc.

On August 6, 1987, respondent issued a Notice of Final Partnership Administrative Adjustment (FPAA) to the tax matters partner for Ridge Energy in which respondent disallowed the losses and investment tax credit basis claimed by Ridge Energy on the partnership return. Ridge Energy and two of its partners filed a petition with this Court contesting the adjustments made by the FPAA in <u>Ridge Energy Systems, Nicholas J. and Sandra Coscia, Partners Other Than the Tax Matters Partner v. Commissioner</u>, docket No. 413-88. On March 11, 1994, this Court entered a decision under Rule 248(b) sustaining respondent's disallowance of the losses and investment tax credit basis reported by the Ridge Energy for its 1983 taxable year.

On May 7, 1995, respondent issued a notice of deficiency in which he determined that petitioner was liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2) and for substantial understatement of tax under section 6661(a) with respect to his 1983 taxable year.

OPINION

Negligence

It is respondent's position that petitioner was negligent in claiming a loss and investment tax credit from his investment in Ridge Energy.[2] Petitioner claims that he is not liable for the additions to tax for negligence because he reasonably relied on Mr. Coscia's advice when he invested in Ridge Energy and when he claimed a loss and credit with respect to the same. To support his contention that his reliance was reasonably based, petitioner points to his age and limited investment experience and to the fact that Mr. Coscia had been his accountant for 4 years at the time of his investment.

Section 6653(a)(1) imposes an addition to tax equal to 5 percent of any underpayment of tax if any part of the underpayment is due to negligence. In addition, section 6653(a)(2) adds to the tax an amount equal to 50 percent of the

_____

[2] Respondent does not argue that petitioner is liable for the additions to tax under sec. 6653(a) due to intentional disregard of rules or regulations.

interest payable with respect to that portion of the underpayment attributable to negligence.

"Negligence" is defined as a lack of due care or a failure to act in a reasonable and prudent manner under the circumstances. Freytag v. Commissioner, 89 T.C. 849, 887 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on another issue 501 U.S. 868 (1991). Petitioner bears the burden of proving that his actions in claiming the loss and credit were not negligent. Rule 142(a); Freytag v. Commissioner, supra at 887. "When considering the negligence addition, we evaluate the particular facts of each case, judging the relative sophistication of the taxpayers as well as the manner in which the taxpayers approached their investment." Turner v. Commissioner, T.C. Memo. 1995-363. Under certain circumstances, reliance on professional advice may provide an adequate excuse for a taxpayer's actions under section 6653(a); however "standing alone, [it] is not an absolute defense to negligence, but rather a factor to be considered." Freytag v. Commissioner, supra at 888. The taxpayer must show that his expert had the relevant expertise and knowledge of pertinent facts to give competent advice. Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir. 1994), affg. T.C. Memo. 1993-480; Freytag v. Commissioner, supra at 888. "Reliance on expert advice is not reasonable where the 'expert' relied on knows nothing about the business in which the taxpayer invested." Goldman v. Commissioner, supra at 408. In addition, the taxpayer must not

have any reason to suspect that the expert's advice may not be disinterested.  Rybak v. Commissioner, 91 T.C. 524, 565 (1988).

Under the standard applied by the Court of Appeals for the Second Circuit in Goldman, it was negligent for petitioner to rely on Mr. Coscia, his accountant, for advice on investments or energy management systems absent evidence that Mr. Coscia held some degree of expertise or specialized knowledge in these areas. Petitioner failed to present any evidence that Mr. Coscia had expertise in investments or knowledge of energy management systems, and nothing in the record indicates that petitioner made any attempt to ascertain the extent to which Mr. Coscia possessed these skills before acting on his advice.  In addition, although petitioner was not aware that Mr. Coscia was being compensated by Saxon Energy for bringing in Ridge Energy investors, petitioner did know that Mr. Coscia himself and members of his family had invested in Ridge Energy, which arguably affected Mr. Coscia's ability to give disinterested advice on the investment.

Neither did petitioner independently investigate the bona fides of the investment.  At the time he made his initial capital contribution, petitioner did not know the nature or function of the equipment being marketed, the value of the equipment, the identity of the lessor, the specifics of any leasing arrangement, or how a profit was to be derived from such arrangement. Petitioner did not request an appraisal of the equipment even though it was the sole income-producing asset of Ridge Energy.

Indeed, according to his testimony, petitioner had only a vague, and in fact incorrect, understanding of the investment, namely, that it had something to do with "drilling". The failure to make even minimal inquiries regarding the investment is a strong indication of negligence. See Goldman v. Commissioner, supra at 407-408; Lucas v. Commissioner, T.C. Memo. 1995-341. Moreover, there is no evidence that petitioner monitored his investment or the activities of Ridge Energy after investing.

Petitioner points to his age and lack of sophistication as an excuse for failing to make an effort to ascertain Mr. Coscia's expertise or the merits of the investment being proposed. We disagree. Petitioner held a college degree and was successfully operating his own business at the time.

We have previously sustained respondent's determination imposing additions to tax for negligence and substantial understatement relating to a loss and investment tax credit claimed with respect to another 1983 Ridge Energy partner in Buck v. Commissioner, T.C. Memo. 1997-191. Likewise, we have upheld respondent's negligence determinations in numerous cases involving taxpayers who invested in energy management systems leased from Saxon Energy and argued that their reliance on professional advice precluded the negligence addition. See Turner v. Commissioner, T.C. Memo. 1995-363; Levine v. Commissioner, T.C. Memo. 1995-362; Maminga v. Commissioner, T.C. Memo. 1995-361; Lucas v. Commissioner, T.C. Memo. 1995-341;

Poplar v. Commissioner, T.C. Memo. 1995-337; Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. without published opinion 1 F.3d 954 (9th Cir. 1993). In all these cases we required a showing of reasonable effort by the taxpayer to ensure that the investment was a viable, profit-motivated transaction in order for the taxpayer to avoid imposition of the negligence additions.

In an attempt to distinguish himself from the taxpayers in Buck, and other cases where negligence additions have been sustained, petitioner cites Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408; Durrett v. Commissioner, 71 F.3d 515 (5th Cir. 1996), affg. in part and revg. in part T.C. Memo. 1994-179; Chamberlain v. Commissioner, 66 F.3d 729 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228; Mauerman v. Commissioner, 22 F.3d 1001 (10th Cir. 1994), revg. T.C. Memo. 1993-23. Petitioner cites these cases as support for his contention that it was reasonable and not negligent for him to rely on the advice of a professional adviser without second-guessing or independently verifying the adviser. To require otherwise, petitioner argues, would nullify the purpose for seeking advice in the first place. See Heasley v. Commissioner, supra. However, these cases are distinguishable because they involve taxpayers who performed significantly more investigation into the merits of the investment and/or sought out

the advice of a professional who was qualified to give advice on the matter involved.

Heasley involved taxpayers who were not high school graduates. Despite substantially less education than petitioner, they nonetheless read at least part of the prospectus, reviewed it with their financial adviser, and subsequently monitored their investment after investing. In these circumstances, the Court of Appeals declined to sustain the Commissioner's negligence determination. In Mauerman v. Commissioner, supra, which concerned the question of whether the Commissioner's refusal to waive additions for a substantial understatement was an abuse of discretion, the Commissioner's deficiency determination involved only the timing of the deduction. The Court of Appeals concluded that the taxpayer's reliance on a tax professional's advice as to the appropriate timing of a deduction was reasonable and therefore the Commissioner's refusal to waive the understatement penalty was an abuse of discretion. The situation in the instant case involves reliance on a professional without any demonstrated capacity in the area with which the advice was concerned.

As to Durrett v. Commissioner, supra, and Chamberlain v. Commissioner, supra, to the extent the holdings in these two cases suggest a relaxation of the requirement that advisers must be knowledgeable if reliance on their advice is to be considered reasonable, cf. Freytag v. Commissioner, supra, we note that both are decisions of the Court of Appeals for the Fifth Circuit.

Appeal of this case is to the Court of Appeals for the Second Circuit, which requires a knowledgeable expert before reliance on his advice is deemed reasonable. Goldman v. Commissioner, 39 F.3d at 408.

The record in this case demonstrates that petitioner knew virtually nothing about the Ridge Energy investment either before or after making it. He chose instead to rely on an adviser with no demonstrated knowledge or experience with respect to energy management systems. In the circumstances, such reliance was not reasonable and does not bar a finding of negligence. Goldman v. Commissioner, supra; Freytag v. Commissioner, supra. Accordingly, we sustain respondent's determination imposing additions to tax under section 6653(a)(1) and (2) for petitioner's 1983 taxable year.

Section 6661(a)

Section 6661(a) imposes an addition to tax equal to 10 percent of the amount of any underpayment attributable to a substantial understatement of income tax. For a noncorporate taxpayer, an understatement is "substantial" if it exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6661(b)(1)(A). Generally, the understatement is the amount of tax required to be shown on the return over the amount of tax imposed which is shown on the return, reduced by that portion of the understatement attributable to the treatment of an item for which there is or

was substantial authority, or with respect to which the relevant facts affecting its treatment were adequately disclosed on the return or in a statement attached thereto. Sec. 6661(b)(2)(A) and (B).

Petitioner makes no argument that there was adequate disclosure. Likewise, petitioner has not produced substantial authority for the treatment of these items. Petitioner's claim that he reasonably and in good faith relied on the advice of his accountant in claiming such items, without evidence of what authority Mr. Coscia relied upon in determining the treatment of such items, is insufficient to show substantial authority. See Buck v. Commissioner, T.C. Memo. 1997-191. "Authority" for this purpose includes statutes or regulatory provisions, court decisions, administrative pronouncements, tax treaties, or legislative history. Sec. 1.6661-3(b)(2), Income Tax Regs. Opinions rendered by tax professionals are not substantial authority.[3] Id.

In the instant case the deficiency upon which the additions to tax were imposed equals $9,549. The amount of tax required to be shown on the return pursuant to the previous partnership proceedings is $13,735. Thus, the understatement ($9,549) is

---

[3] Because we conclude that petitioner has not made adequate disclosure or produced substantial authority, it is unnecessary for us to consider whether petitioner's investment in Ridge Energy is a "tax shelter" within the meaning of sec. 6661(b)(2)(C).

substantial because it exceeds the greater of $5,000 or 10 percent of the amount required to be shown on the return ($1,373.50). Petitioner has not shown that the understatement is reduced under section 6661(b)(2). We, accordingly, sustain respondent's determination of this addition.

Section 6661(c) provides that respondent "may" waive all or any part of the addition to tax under section 6661(a) upon a showing by petitioner that there was reasonable cause for the understatement (or a part thereof) and that petitioner acted in good faith. There is no evidence that a waiver was requested or denied in this case. Even if we were to assume that a waiver had been requested, respondent's refusal to grant one is reviewable only for abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988). Based upon our holding that petitioner's reliance on his accountant in claiming the deduction and credit with respect to the Ridge Energy investment was not reasonable, we likewise hold that any failure by respondent to grant a waiver based on petitioner's reliance would not constitute an abuse of discretion.

To reflect the foregoing,

Decision will be entered

for respondent.